UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-20494-Civ-GAYLES
MAGISTRATE JUDGE P.A. WHITE

ELTON EARL GRAVES,                    :

    Petitioner,                   :

v.                                    :        REPORT OF

                                  :        MAGISTRATE JUDGE

JULIE L. JONES,                       :

    Respondent.                   :

_____       :

## I. Introduction

Elton Earl Graves, a state prisoner currently confined at Hamilton Correctional Institution-Annex in Jasper, Florida, filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, attacking the constitutionality of his convictions and sentences entered in Case No. 07-43499 in the Circuit Court of the Seventeenth Judicial Circuit of Florida at Miami-Dade County.

The case has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of the petition with attached exhibits (DE# 1), the Court has the respondent's response to an order to show cause with supporting exhibits, which includes the trial and sentencing transcripts. (DE# 12, 13).

## II. Claims

Petitioner challenges his convictions and sentences on the following grounds:

1.    His life sentence without parole was imposed in violation of the principles established in Apprendi v.

New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed. 2d 435 (2000) and Blakely v. Washington, 542 U.S. 296, 296, 124 S. Ct. 2531, 2533, 159 L. Ed. 2d 403 (2004).

2. He received ineffective assistance of trial counsel, because his lawyer improperly advised him to reject the state's plea offer of seven to eight years' imprisonment with a five-year minimum mandatory term on the basis that the state's case was weak and he could prevail at trial and as a result of counsel's misadvice he received a life sentence.

III. Facts[1]

Graves was creating a disturbance at a Burger King restaurant located in Miami, Florida, prompting a call to the police by a Burger King employee. Officer Campo was the first officer that responded to the Burger King. Officer Campo located Graves outside the bathroom and he asked Graves to turn around, which Graves did. When the officer ordered Graves to take his hands out of his pockets, Graves refused to comply with the command. The officer then ordered Graves to get on the ground so that he could be arrested for disorderly conduct. Graves again did not comply with the command and, instead, approached the officer, causing the officer to pull out his taser. Since Graves refused to sit down, Officer Campos tased Graves. Graves pulled out the taser prongs and Officer Campos gave chase, attempting to tase Graves for a second time, but he missed. Graves then attacked the officer, repeatedly striking the officer in the face. During the violent struggle, Graves tried to grab the officer's gun but the officer was able to control the gun and then shoot and wound Graves.

Officer Campos suffered multiple injuries and he was transported to the hospital. Graves was separately transported to

---

[1]The facts have been obtained by review of the evidence admitted at trial, as revealed by the trial transcript. A copy of the trial transcript can be found at DE# 13-2 through 13-8. A thorough recitation of the facts of the case with citations to the trial transcript can be found in the briefs on direct appeal. See Initial Brief of Appellant at 2-4; Answer Brief of Appellee at 2-10. (DE# 12-1; App. F, G).

the hospital by fire rescue and he was accompanied by Officer Decespedes. On the way to the hospital in the ambulance, Graves became verbally and physically combative and continually threatened to kill Officer Decespedes. Recovered from the Burger King was one bullet, two laser prongs and a video tape recording showing a portion of the altercation.

## IV. Procedural History

Graves was charged by Information with the offenses of attempted second degree murder of a law enforcement officer (Count 1), resisting an officer with violence (Count 2), depriving an officer of his means of protection (Count 3), and assault on a law enforcement officer (Count 4). See Information. (DE# 12-1; App. B). The crimes charged in Counts 1 through 3 involved Officer Campo and the crime charged in Count 4 involved Officer Decespedes. Id. Graves entered pleas of not guilty to the offenses charged and the case proceeded to jury trial. Before trial, the state dismissed Count 4 of the Information and filed a notice of intent to rely upon bad acts. The state was permitted to admit evidence as to the assault against Officer Decespedes.

The jury found Graves guilty of attempted second degree murder of a law enforcement officer and resisting arrest with violence and he was adjudicated guilty of those offenses by the trial court. (DE# 12-1; App. C, D). He was found not guilty of attempting to deprive an officer of his means of protection and a judgment of acquittal was entered on that offense. Id. The trial court sentenced Graves to a life term of imprisonment as an habitual felony offender as to Count 1 and a concurrent ten-year term of imprisonment as to Count 2. (DE# 12-1; App. E).

Graves prosecuted a direct appeal from his convictions raising the sole issue that the trial court erred in allowing the state to

introduce evidence of the uncharged offense that Graves had threatened an unrelated police officer on the way to the hospital in that the uncharged crime was not inextricably intertwined with the charged offenses. (DE# 12-1; App. F). The Florida Third District Court of Appeal affirmed the convictions and sentences in a *per curiam* decision without written opinion. (DE# 12-1; App. H). See also Graves v. State, 77 So.3d 1269 (Fla. 3d DCA 2011). Graves's pro se motion for rehearing was subsequently denied. (DE# 12-1; App. J, K). Graves did not seek review of his convictions or sentences before the Florida Supreme Court or the United States Supreme Court.

Approximately four months after the direct appeal proceeding had concluded, Graves commenced his pursuit of pro se postconviction relief. He first filed in the trial court a motion to correct illegal sentence pursuant to Fla.R.Crim.P. 3.800(a), challenging his life sentence as exceeding the applicable statutory maximum of thirty years. (DE# 12-1; App. L). The trial court summarily denied Graves's Rule 3.800 motion, stating in pertinent part as follows:

> The trial court utilized Florida Statutes 782.04 and 775.0823 in determining that range of punishment available to the defendant at sentencing. The trial court further determined that in the instant case the Attempted Second Degree Murder of a Law Enforcement [Officer] conviction was first degree felony punishable by life when interpreting Florida Statutes 775.0823 and 782.04 together. As such, the defendant's enhancement as a Habitual offender lawfully made his possible sentencing range up to Life imprisonment. As such, the trial court's imposition of a Life Sentence in State Prison as a Habitual Offender for count One of the Information was not in error and was permissible.

(Order Denying Motion to Correct Illegal Sentence Pursuant to Rule 3.800(a))(DE# 12-1; App. O). Graves did not take an appeal from the trial court's ruling.

Approximately two months after his Rule 3.800 motion had been

denied, Graves filed in the trial court a motion for postconviction
relief pursuant to Fla.R.Crim.P. 3.850, essentially challenging his
convictions and sentences on the same ineffective assistance of
trial counsel claim raised in this federal petition as ground two.
(DE# 12-1; App. P). The state filed a response, first discussing
the applicable standard established in Strickland v. Washington,
466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) for analyzing
ineffective assistance of trial counsel claims and then argued that
Graves was not entitled to relief in that his ineffective
assistance of trial counsel claim was clearly refuted by the
record. (DE# 12-1; App. Q). In a well-reasoned written order, the
trial court summarily denied Graves postconviction relief, finding
his claim meritless as indicated by the record. (DE# 12-1; App. R).
Graves did not appeal the trial court's ruling.

After waiting for approximately three months after he was
denied relief on his Rule 3.850 motion, Graves filed a motion
pursuant to Fla.R.Crim.P. 3.800, entitled, "Motion for Correction
of Illegal Sentence [Manifest Injustice]." (DE# 12-1; App. S).
Graves attacked his life sentence on the same ground raised in his
earlier Rule 3.800 motion. Id. In a written order, the trial court
summarily denied the second Rule 3.800 motion, expressly finding
the motion an improper successive motion. (DE# 12-1; App. U). The
court ruled that Graves was collaterally estopped from re-
litigating the claim that had been raised and rejected in his
earlier Rule 3.800 motion. Id. Graves's motion for rehearing was
also denied with the trial court ruling that Graves had failed to
raise a legally sufficient claim why the court should revisit its
denial of his most-recent Rule 3.800 motion as successive. (DE# 12-
1; App. V, W).

Graves appealed the denial of his second Rule 3.800 motion,
arguing that (1) the trial court had abused its discretion in

applying the doctrine of collateral estoppel to bar relief, because the application of collateral estoppel resulted in a manifest injustice in his case; and (2) the trial court's imposition of a life sentence for a second-degree felony obvious on the face of the record could be corrected in a successive motion for correction of sentence pursuant to the manifest injustice exception. (DE# 12-1; App. X). In a decision without written opinion, the Florida Third District Court of Appeal *per curiam* affirmed the trial court's rulings. (DE# 12-1; App. Y). See also Graves v. State, 150 So.3d 1154 (Fla. 3d DCA 2014). Graves filed a motion for rehearing in which he argued for the first time that his life sentence violated the dictates of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed. 2d 435 (2000) and Blakely v. Washington, 542 U.S. 296, 296, 124 S.Ct. 2531, 2533, 159 L.Ed. 2d 403 (2004). (DE# 12-1; App. Z). The state appellate court denied the motion for rehearing without explanation and the mandate issued. (DE# 12-1; App. AA, Y).

## V. Discussion

Four months after all state court proceedings had concluded, Graves came to this Court filing the instant pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. See Petition with attachments. (DE# 1). The respondent has filed a response to the petition. See Response to Petition for Writ of Habeas Corpus. (DE# 12). The respondent concedes that the petition has been timely filed pursuant to 28 U.S.C. §2244(d)(1)-(2), but argues that Graves is not entitled to review on the merits of the claims raised, because the claims are unexhausted and procedurally barred from federal habeas review. Id. at 13-16. The respondent also argues that Graves should not be excused from the procedural bar based upon the principles established in Martinez v. Ryan, ___ U.S. ___, ___, 132 S.Ct. 1309, 1315-16, 182 L.Ed.2d 272 (2012) and Trevino v. Thaler, ___ U.S. ___, 133 S.Ct. 1911, 185 L.Ed.2d 1044 (2013). Id. at 20-27. The respondent has also addressed the claims presented on

the merits and argues, in the alternative, that Graves is not entitled to relief on the claims presented since they are meritless. Id. at 18-19, 25-27.

The undersigned agrees with the respondent that Graves is not entitled to review on the merits of the two claims now presented in the subject §2254 petition.

## A. Exhaustion

It is beyond dispute that before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies; 28 U.S.C. §2254(b)(1), thereby giving the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29-30 (2004)(citing Duncan v. Henry, 513 U.S. 364, 365 (1995)(per curiam)(quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). To provide the state with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court thereby alerting that court to the federal nature of the claim. Baldwin, 541 U.S. at 29-30; Duncan, 513 U.S. at 365-366. See also O'Sullivan v. Boerckel, 526 U.S. 838 (1999). An applicant's federal writ of habeas corpus will, therefore, not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). In Florida, exhaustion is ordinarily accomplished on direct appeal. If not, it may be accomplished by the filing of a Rule 3.850 motion. Leonard v. Wainwright, 601 F.2d 807, 808 (5th Cir. 1979).[2] Claims of ineffective assistance of trial counsel are generally not reviewable on direct appeal, but are properly raised in a motion for postconviction relief. See Kelley v. State, 486 So.2d 578, 585 (Fla.), cert. denied, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986).

---

[2]The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered before October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

As to ground two, the respondent correctly argues that the claim is unexhausted. While Graves did raise the ineffective assistance of trial counsel claim presented here in his Rule 3.850 motion, he failed to take an appeal from the trial court's denial of his Rule 3.850 motion. In Florida, exhaustion of claims raised in a Rule 3.850 motion includes an appeal from the denial of the motion. See Leonard, 601 F.2d at 808 (holding that Florida state remedies are exhausted after appeal to the district court of appeal from denial of a collateral attack upon a conviction).

A petitioner's claim that is not exhausted but would clearly be barred if returned to state court must be denied. Kelley v. Secretary for Dept. of Corr., 377 F.3d 1317, 1351 (11th Cir. 2004)("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, [the district court] can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." (internal quotation marks omitted)). It would be futile here to dismiss the case to give Graves the opportunity to exhaust claim two because the claim could have and should have been raised on appeal from the trial court's ruling, denying his Rule 3.850 motion.

The petitioner's unexhausted claim is now incapable of exhaustion at the state level and would be procedurally barred under Florida law since Graves cannot now take a timely appeal from the trial court's order. See Fla.R.App.P. 9.140(b)(3). Due to Graves's failure to take a proper appeal from the denial of post conviction relief, there is no longer a remedy available in state court. Since Graves cannot now take an appeal from the denial of his Rule 3.850 motion to attempt to successfully exhaust the ineffective assistance of counsel claim, claim two is considered

procedurally defaulted unless Graves can be excused from the default which he cannot for the reasons expressed below. <u>See Thomas v. Crews</u>, 2013 WL 3456978, 14, 14 n.8 (N.D.Fla. 2013).

With regard to claim one, the respondent's exhaustion argument lacks merit. The claim was raised in Graves's motion for rehearing on appeal from the trial court's order, denying his second Rule 3.800 motion as successive. <u>See</u> DE# 12-1; App. Z, AA). Since the claim was presented to the state courts, the claim was exhausted. However, as will be shown below, the claim is procedurally barred, because it was raised in a procedurally incorrect way.

## B. <u>Procedural Bar</u>

A procedural-default bar in federal court can arise in two ways: (1) when a petitioner raises a claim in state court and the state court correctly applies a procedural default principle of state law; or (2) when the petitioner never raised the claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred in state court. <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302-03 (11th Cir. 1999). "The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." <u>Smith v. Jones</u>, 256 F.3d 1135, 1138 (11th Cir. 2001). Pursuant to this doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." <u>Id</u>., <i>citing</i>, <u>O'Sullivan</u>, 526 U.S. at 845-46. <u>See also</u> <u>Maples v. Thomas</u>, ___ U.S. ____, ____, 132 S.Ct. 912, 922, 181 L.Ed.2d 807 (2012)(citations omitted); <u>Coleman v. Thompson</u>, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991); <u>In Re Davis</u>, 565 F.3d 810, 821 (11th Cir. 2009)(citation omitted).

As to claim one, Florida law clearly provides that a defendant may not obtain a merits review of a claim raised for the first time in a motion for rehearing. Thus, claim one is procedurally defaulted because it was not raised in a procedurally correct manner in the state courts. <u>See</u> <u>Griffin v. Florida</u>, 2009 WL 691327, at *5, n.6 (N.D. Fla. 2009), *citing*, Fla.R.App.P. 9.330,[3] <u>Cleveland v. Florida</u>, 887 So.2d 362 (Fla. 5th DCA 2004).[4] As indicated above, a petitioner's claim that is not exhausted but would clearly be barred if returned to state court must be denied. <u>See</u> <u>Kelley</u>, 377 F.3d at 1351. This is the situation with regard to claim two.

Even when a claim has been procedurally defaulted in the state courts, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Maples v. Thomas</u>, ___ U.S. ____, ___, 132 S.Ct. 912, 922,

---

[3]Florida Rule of Appellate Procedure 9.330 regarding motions for rehearing, clarification or certification provides:

> A motion for rehearing, clarification, or certification ... may be filed within 15 days of an order or within such other time set by the court. A motion for rehearing shall state with particularity the points of law or fact that, in the opinion of the movant, the court has overlooked or misapprehended in its decision, *and shall not present issues not previously raised in the proceeding*....

<u>Id</u>.(emphasis added).

[4]The Florida appellate court explained in <u>Cleveland v. Florida</u>, 887 So.2d 362 (Fla. 5th DCA 2004):

> Motions for rehearing are strictly limited to calling an appellate court's attention—without argument—to something the appellate court has overlooked or misapprehended. "The motion for rehearing is not a vehicle for counsel or the party to continue its attempts at advocacy." *Goter v. Brown*, 682 So.2d 155 (Fla. 4th DCA 1996), *rev. denied*, 690 So.2d 1299 (Fla. 1997). No new ground or position may be assumed in a petition for rehearing. *Corporate Group Service, Inc. v. Lymberis*, 146 So.2d 745 (Fla. 1962); *see also Ayer v. Bush*, 775 So.2d 368 (Fla. 4th DCA 2000)(recognizing that it is a rather fundamental principal of appellate practice and procedure that matters not argued in the briefs may not be raised for the first time on a motion for rehearing); *Sarmiento v. State*, 371 So.2d 1047 (Fla. 3d DCA 1979)(same).

<u>Id.</u> at 364.

181 L.Ed.2d 807 (2012)(citations omitted); In Re Davis, 565 F.3d 810, 821 (11th Cir. 2009)(citation omitted). See also Martinez v. Ryan, ____ U.S. ____, ____, 132 S.Ct. 1309, 1316, 182 L.Ed.2d 272 (2012).

For a petitioner to establish cause, the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992)(quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397). See also Siebert v. Allen, 455 F.3d 1269, 1272 (11th Cir. 2006). To show prejudice, in essence, a petitioner must demonstrate that there is at least a reasonable probability that the outcome of the proceeding would have been different. See Crawford v. Head, 311 F.3d 1288, 1327-28 (11th Cir. 2002). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has resulted in the conviction of someone who is actually innocent. See House v. Bell, 547 U.S. 518 (2006); Dretke v. Haley, 541 U.S. 386, 124 S.Ct. 1847 (2004). Graves has failed to make the requisite showing to overcome the procedural default. This is especially true, because the claims are meritless as indicated below.

Solely as to ground two, it appears that Graves is arguing that he should be excused from the procedural default based upon the principles established in Martinez v. Ryan, 132 S.Ct. at 1315-16 (modifying the general rule in Coleman to expand the "cause" that may excuse a procedural default) and Trevino v. Thaler, ____ U.S. ____, 133 S.Ct. 1911, 185 L.Ed.2d 1044 (2013). See Reply at 5. (DE# 14). In Martinez, the Supreme Court held that if "a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an

ineffective-assistance claim ..." when (1) "the state courts did not appoint counsel in the initial-review collateral proceeding" or (2) "appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective" pursuant to Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Id. In such instances, the prisoner "must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Id. Trevino extended this rule to situations in which, even if a state's procedures technically permit a defendant to bring a claim of ineffective assistance of trial counsel on direct appeal, "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." 133 S.Ct. at 1921.

Thus, where a state requires the petitioner to raise an ineffective assistance of trial counsel claim in a collateral proceeding, such as in the State of Florida, cause can be shown if the state did not appoint counsel to assist in the initial collateral review proceeding. Martinez, 132 S.Ct. at 1318. See also Trevino, 133 S.Ct. 1911. Graves was not represented by counsel in his state collateral proceedings and, accordingly, has established cause. Although Graves can show cause for the default, he cannot overcome the procedural default, because he cannot demonstrate that the underlying ineffective assistance of trial counsel claim has some merit.

C. Analysis

1. Ground One

Graves claims in ground one that his life sentence without

parole was imposed in violation of the principles established in
Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed. 2d
435 (2000) and Blakely v. Washington, 542 U.S. 296, 296, 124 S. Ct.
2531, 2533, 159 L. Ed. 2d 403 (2004).[5] This claim is without merit.

In Almendarez-Torres v. United States, 523 U.S. 224, 243
(1998), the Supreme Court held that a federal sentencing provision
which increases the maximum sentence for an alien who illegally
enters the United States after being deported does not set out a
separate offense, but rather is a penalty provision or sentencing
factor for the offense of illegal reentry. The Court in that case
noted that "recidivism ... is a traditional, if not the most
traditional, basis for a sentencing court's increasing an
offender's sentence." Id. In Apprendi, the Court declined to
overrule Almendarez-Torres, holding that it constituted a "narrow
exception" to the rule that "any fact that increases the penalty
for a crime beyond the prescribed statutory maximum must be
submitted to a jury and proved beyond a reasonable doubt."
Apprendi, 530 U.S. at 490. It concluded that its newly-announced
rule applies to any fact "other than the fact of a prior
conviction." Id. Accordingly, federal courts have repeatedly held
that the holding of Almendarez-Torres survived Apprendi. See, e.g.,
United States v. Acevedo, 285 F.3d 1010 (11th Cir. 2002); United
States v. Anglin, 284 F.3d 407, 408 (2d Cir. 2002).

This Court points out that Florida's habitual offender
sentencing provisions allow the enhancement of sentences for

---

[5]In brief, the United States Supreme Court held in Apprendi v. New
Jersey, 530 U.S. 466 (2000), that "other than the fact of a prior conviction,
any fact that increases the penalty for a crime beyond the prescribed
statutory maximum must be submitted to a jury, and proved beyond a reasonable
doubt." Id. at 490.  In its later opinion in Blakely v. Washington, 542 U.S.
296 (2005), the Supreme Court explained that under Apprendi "the relevant
'statutory maximum' is not the maximum sentence a judge may impose after
finding additional facts, but the maximum he may impose without any additional
findings." Id. at 303-04.

recidivism, and the Florida courts have repeatedly rejected the similar claim that Florida's habitual felony offender statute, which enhances a sentence for recidivism, is unconstitutional based on *Apprendi*. See <u>McGregor v. State</u>, 789 So.2d 976 (Fla. 2001). <u>See also Saldo v. State</u>, 789 So.2d 1150 (Fla. 3d DCA 2001); <u>Gordon v. State</u>, 787 So.2d 892 (Fla. 4th DCA 2001); <u>Wright v. State</u>, 780 So.2d 216 (Fla. 5th DCA 2001).[6]

Here, extensive sentence proceedings were conducted during which the trial court found that due to Graves's lengthy past criminal record, he clearly qualified as an habitual felony offender pursuant to Florida sentencing laws. <u>See</u> Transcript of sentencing proceeding conducted on April 16, 2010, at 1-68. (DE# 13-1). His sentence was, therefore, enhanced on that basis and there is no violation pursuant to *Apprendi*.

Accordingly, the state court determinations that Graves was not entitled to relief on this claim was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in

---

[6]In so holding, the court in *Wright* stated in pertinent part as follows:

Defendant argues that under the habitual felony offender statute, the trial judge must not only make a finding of fact that a prior conviction exists, but also must find that the conviction was for a qualified offense committed within five years, was not for a violation of section 893.13, Florida Statutes (1993), and had not been vacated, or the defendant pardoned. Therefore, he concludes that under *Apprendi*, the statute is unconstitutional.

The United States Supreme Court expressly acknowledged in *Apprendi* that recidivism is a traditional basis for increasing a sentence and is a fact which does not relate to the commission of the offense before the court. (citation omitted). Nothing in *Apprendi* overrules the Florida Supreme Court's holding in *Eutsey v. State*, 383 So.2d 219 (Fla. 1980) that the determination that a defendant could not be sentenced as an habitual felony offender was independent of the question of guilt in the underlying substantive offense and did not require the full panoply of rights afforded a defendant in the trial of the offense.

<u>Wright v. State</u>, 780 So.2d 216, 216-17 (Fla. 5th DCA 2001).

the state court proceeding. Denial of federal habeas relief on this claim is warranted pursuant to 28 U.S.C. §2254(d). <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

### 2. <u>Ground Two</u>

Graves alleges that he received ineffective assistance of trial counsel, because his lawyer improperly advised him to reject the state's plea offer of seven to eight years' imprisonment with a five-year minimum mandatory term on the basis that the state's case was weak and he could prevail at trial. Graves contends that as a result of counsel's misadvice, he received a life sentence.[7] This claim is meritless, as refuted by the record.[8]

---

[7]The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defence." U.S. CONST. amend. VI. Under the applicable test set forth in *Strickland*, for a petitioner to prevail on a claim of ineffective assistance of counsel, a petitioner must show both that (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A criminal defendant is entitled to the effective assistance of competent counsel before deciding whether to plead guilty. <u>Padilla v. Kentucky</u>, 559 U.S. 356, 364-65, 130 S.Ct. 1473, 1480-81, 176 L.Ed.2d 284 (2010). It is beyond dispute that an attorney has a duty to advise a defendant who is considering a guilty plea of the available options and possible consequences. <u>See generally Brady v. United States</u>, 397 U.S. 742, 756 (1970). <u>See also Von Moltke v. Gillies</u>, 332 U.S. 708, 721, 68 S.Ct. 316, 322, 92 L.Ed. 309 (1948)("Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered. Determining whether an accused is guilty or innocent of the charges in a complex legal indictment is seldom a simple and easy task for a layman ...."). The law requires counsel to research the relevant law and facts and to make informed decisions regarding the fruitfulness of various avenues. <u>United States v. Grammas</u>, 376 F.3d 433, 436 (5th Cir. 2004). <u>See generally Lafler v. Cooper</u>, ___ U.S. ___, 132 S.Ct. 1376, 1385 (2012); <u>Missouri v. Frye</u>, ___ U.S. ___, 132 S.Ct. 1399 (2012). The Supreme Court in *Frye* and *Lafler* clarified that the Sixth Amendment right to effective assistance of counsel under the standard established in <u>Strickland v. Washington</u>, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984) extends to the negotiation and consideration of plea offers that lapse or are rejected. <u>See Missouri v. Frye</u>, 132 S.Ct. 1399, 1404-08 (2012); <u>Lafler v. Cooper</u>, 132 S.Ct. 1376, 1384 (2012).

[8]While Graves appears to take issue with the respondent's argument that ground two is procedurally barred from federal habeas review, he has apparently conceded that the claim is meritless, as argued by the respondent. <u>See</u> Reply at 5. (DE# 14). Since the determination whether ground two has merit is directly related to the procedural bar issue, the undersigned has addressed ground two on the merits in this Report.

The state court record shows that, shortly before the trial
was to commence, the trial court engaged in a lengthy discussion in
open court with prosecutor Hillah Mendez and trial counsel Robert
Barrar regarding the maximum sentence Graves could receive if he
were found guilty of the crimes charged. See Transcript of
proceeding conducted on February 9, 2010, at 239-41. (DE# 13-2).
Graves was present during the discussion. Id. During the
discussion, the court stated:

> Now, why this becomes important is if at the end we do not get
> there - unless this man is convicted of these charges - but if
> we ever get there and he is convicted of the charges and he is
> - there is an enhancement for trying to kill an officer, then
> it will be a first-degree felony punishable by up to thirty
> years.
>
> He is also an habitual felony offender, may be punishable by
> up to life.
>
> So I want to make sure before the trial has started, even
> though we mentioned it to him last week that Hilah [sic]
> thought that it was a convoluted theory of how it could be a
> life felony, a lesser.
>
> I did not agree on the lesser, but on the charges, it is - at
> the end of the trial, this may be punishable by up to life as
> an habitual felony offender.
>
> So I want to make sure that the defendant understands that -
> you know, he has chosen to go to trial. We are all here for
> trial, and just so we know, life is a possibility. So let us
> swear in the defendant.

Id. at 240-41.


Graves was then sworn and the following exchange resulted
between the trial court, Graves and trial counsel Barrar:

THE COURT:      Sir, your name and age.

THE DEFENDANT:  Elton Graves. Forty-two.

THE COURT:      You have heard the conversation, and I like
                to do everything in front of the defendant to
                make sure you know what you are doing here.

Even though the other day, we discussed a discharge, maybe a second-degree felony, which is formerly punishable by up to fifteen years, if I am correct, and the statute reclassifies attempted second-degree murder, when both involves a law enforcement officer with a first-degree felony punishable by up-to thirty years, it is up to thirty, and if as an habitual felony offender, you could be enhanced up to life. Life means life, where you actually die in prison.

Do you understand all that?

THE DEFENDANT:   Yes, sir.

THE COURT:   Knowing that thirty years or life may be a possibility in your case, you still want to go to trial?

THE DEFENDANT:   Yes, sir.

THE COURT:   Again, whose decision is it to go to trial?

THE DEFENDANT:   Mine.

THE COURT:   And you accept full responsibility for your decision?

THE DEFENDANT:   Yes.

THE COURT:   Your lawyer, nobody else is keeping you from accepting any State offer?

THE DEFENDANT:   No, sir.

MR. BARRAR:   *It is my position that I think he should have accepted the seven years and - I think he should have accepted that.*

THE COURT:   I am sure you are going to fight for him like -

MR. BARRAR:   Of course. That is what I always do.

Id. at 241-43. (emphasis added).

It is apparent from the record that the state had extended Graves a plea offer of seven years, trial counsel advised Graves to accept the offer to avoid a much harsher sentence if he proceeded to trial and was found guilty, and Graves rejected trial counsel's

advice. It is further apparent that it was Graves's decision to proceed to trial after having been informed in strong and clear terms by the trial court of a possible maximum sentence of thirty years' imprisonment or a life sentence if found to qualify as a habitual felony offender. Graves was told that a life sentence meant life with no parole.

Thus, as determined by the state trial court in the postconviction proceeding,[9] the above-reviewed record conclusively establishes that trial counsel discussed with Graves the state's plea offer and it was Graves who rejected the offer. In fact, trial counsel encouraged Graves to accept the plea offer. Counsel again informed Graves in open court of the plea offer and Graves, while under oath, unequivocally told the court that he wanted to proceed to trial. The trial immediately followed Graves's sworn statements that he wanted to proceed to trial despite the possibility of a lengthy sentence, which could mean life imprisonment as an habitual felony offer. Movant's solemn declarations in open court carry a strong presumption of truthfulness. See generally Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 52 L.Ed.2d 136(1977). The representation provided by trial counsel was in no way ineffective with regard to the state's plea offer and advice given to Graves about whether to accept the offer. Strickland, supra. See generally Lafler v. Cooper, ____ U.S. ____, 132 S.Ct. 1376, 1385 (2012); Missouri v. Frye, ___ U.S. ____, 132 S.Ct. 1399 (2012).

As aptly pointed out by the trial court in its order, denying Graves's Rule 3.850 motion, even if trial counsel had misadvised Graves about his maximum sentence exposure, the trial court's colloquy cured any defect on the issue and Graves could not-then rely on counsel's advice over the court's advice. See Order Denying

---

[9] See Order Denying Defendant's Pro Se "Emergency" Motion for Post Conviction Relief. (DE# 12-1; App. R).

Defendant's Pro Se "Emergency" Motion for Post Conviction Relief at 3, *citing*, <u>Nelfrard v. State</u>, 34 So.3d 221, 223 (Fla. 4th DCA 2010)(stating that "[w]here the court informs a defendant of his sentencing exposure, a defendant may not reasonably rely on a contrary representation by counsel."). (DE# 12-1; App. R). Accordingly, as concluded by the trial court, because the trial court properly informed Graves of  the maximum penalty he faced, there is no evidence that, even if Graves had been improperly informed by his counsel regarding the sentence that could be imposed, he suffered any prejudice as a result of that misadvice. Denial of federal habeas relief on this claim is also warranted pursuant to 28 U.S.C. §2254(d). <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

### D. <u>Conclusion</u>

Graves has not demonstrated actual prejudice to overcome the procedural bar in that both of his grounds are meritless. Besides not having demonstrated prejudice from application of the procedural bar, application of the bar is appropriate in this case, because Graves has not established that a fundamental miscarriage of justice will result here when applying the bar. To make such a showing, the petitioner must assert and demonstrate actual innocence. <u>See</u>  <u>House v. Bell</u>, 547 U.S. 518; <u>Dretke v. Haley</u>, 541 U.S. 386. The actual innocence exception to the unreviewability of procedurally defaulted claims is applied only in the rarest of cases; <u>see</u> <u>Dretke</u>, 541 U.S. at 392-93, 124 S.Ct. at 1852, and Graves has failed to meet the high standard as to his convictions or sentences. <u>See</u> <u>Bousley v. United States</u>, 523 U.S. 614 (1998), <u>quoting</u>, <u>Schlup v. Delo</u>, 513 U.S. 298, 327-328 (1995). Accordingly, Graves is not entitled to federal habeas corpus review on the merits of the claims raised in his federal petition. <u>See</u> <u>O'Sullivan v. Boerckel</u>, 526 U.S. at 848-49. <u>See also</u> <u>Coleman v. Thompson</u>, 501 U.S. at 750-51; <u>United States v. Frady</u>, 456 U.S. 152, 168 (1982);

<u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977). Despite the procedural bar, the claims have been effectively reviewed on the merits.

## VI. <u>Certificate of Appealability</u>

As amended effective December 1, 2009, §2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rules Governing §2254 Proceedings, Rule 11(b), 28 U.S.C. foll. §2254.

After review of the record, Petitioner is not entitled to a certificate of appealability. "A certificate of appealablilty may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To merit a certificate of appealability, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. <u>Slack v. McDaniel</u>, 529 U.S. 473, 478, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). <u>See also</u> <u>Eagle v. Linahan</u>, 279 F.3d 926, 935 (11th Cir. 2001). Because the claims presented are procedurally barred and/or clearly without merit, Petitioner cannot satisfy the *Slack* test. <u>Slack</u>, 529 U.S. at 484.

As now provided by Rules Governing §2254 Proceedings, Rule 11(a), 28 U.S.C. foll. §2254: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted

to this report and recommendation.

VII. <u>Recommendations</u>

Based upon the foregoing, it is recommended that the petition for writ of habeas corpus be denied and no certificate of appealability issue.

SIGNED this <u>2</u>nd day of December, 2015.

UNITED STATES MAGISTRATE JUDGE

cc:  Elton Earl Graves, <u>Pro Se</u>
     DC# 089321
     Hamilton Correctional Institution-Annex
     10650 SW 46th Street
     Jasper, FL 32052

     Magaly Rodriguez, AAG
     Office of the Attorney General
     Rivergate Plaza
     444 Brickell Avenue
     Suite 650
     Miami, FL 33131